THE NORTH AMERICA. THE P. R. R. NO. 8. THE INTERSTATE.*

(Circuit Court of Appeals, Second Circuit. May 14, 1919.)

No. 222.

COLLISION ☞95(2)—CROSSING TOWS—VIOLATION OF RULES.

One of two tugs, with tows, crossing at night in New York Bay, having a single scow in tow on a 100-fathom hawser, with the other tow on her starboard side, which crossed the course of the other without even signaling, *held* solely in fault for a collision between the tows.

Appeal from the District Court of the United States for the Eastern District of New York; Thomas I. Chatfield, Judge.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Certiorari denied 250 U. S. ——, 40 Sup. Ct. 14, 64 L. Ed. ——.

Suit for collision by the Central Railroad Company of New Jersey against the steam tug North America, William A. Jamison, and others, claimants, with the scow P. R. R. No. 8 and the steam tug Interstate impleaded. Decree against the North America, and her claimant appeals. Affirmed.

For opinion below, see 238 Fed. 250.

Foley & Martin, of New York City (W. J. Martin, of New York City, of counsel), for libelant.

Park & Mattison, of New York City (S. Park, of New York City, of counsel), for the Interstate.

Harrington, Bigham & Englar, of New York City (T. Catesby Jones and Dix W. Noel, both of New York City, of counsel), for the North America.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. On March 4, 1915, a collision occurred between the barge Mechanic, of the tow of the steam tug Interstate, and the scow No. 8, in tow of the steam tug North America, in the upper bay below Liberty Island. As a result thereof, a libel was filed by the libelant, as owner of the Mechanic and as bailee of the cargo thereon, and on behalf of the crew, against the North America and the scow No. 8. By petition, the owner of the North America brought in the steam tug Interstate, which had the Mechanic in tow as a party defendant. The No. 8 was picked up by the North America at the anchorage ground near the Black Tom channel, for the purpose of towing her to the dumping ground off Sandy Hook. The Interstate was bound for Spuyten Dyvil creek, Harlem River, having come from Arlington, Staten Island. The tide was flood and the night was fairly clear. The Mechanic was made fast by two short hawsers and had a cargo of structural iron. The North America made fast the bridle of her hawser on the No. 8 and started in a course across the bay, paying out her hawser, proceeding under one bell until 100 fathoms or more of the hawser were thus out. She ported her wheel to proceed on her regular course down the bay between south by west and south-southwest. The North America was exhibiting her green light to the Interstate, and when first observed was substantially ahead of her, crossing her bow from port to starboard. The Interstate was on a course from the buoy off Robins' Reef Lighthouse to a point having the lights of the Cortlandt Street ferry. The Interstate kept on that course substantially, observing two white lights about two points on her port bow, moving across the channel. It was then that she first observed the tow of the North America. The Interstate starboarded her wheel immediately, changing her course three points. There was a strong flood tide, and the starboard bow of the No. 8 struck the port bow of the Mechanic, which was being towed stern first. The Mechanic filled with water and capsized. After the North America had lengthened her hawser, she put her wheel to port and proceeded ahead with a jingle bell. She did not give a signal to the Interstate, but

kept on after the collision to the dumping grounds. The point of collision was about mid-channel off of Black Tom.

We are satisfied that the North America was solely at fault and should be held for the damages flowing from the collision. She crossed the Interstate's bow in porting her helm. The effect of this maneuver was to put the Interstate in a pocket, and this directly resulted in the collision. After the green lights of the North America were observed by the navigator of the Interstate, the course of the Interstate was changed to port, bringing her all the while nearer to the anchorage. She had a right to assume, on at first seeing the lights on the scow of the tow of the North America, that the North America would keep out of the way. The North America gave no whistle to the Interstate, and kept on down the bay without regard to the Interstate. The North America thus proceeded across the bow of the Interstate, leaving her tow behind. This was a dangerous undertaking, with the Interstate proceeding up the bay on her starboard side, and, in our opinion, constituted the fault. The tow on a long hawser was subjected to the effect of the flood tide, and this developed a pocket. It prevented the escape of the Interstate. The North America should have awaited the passing of the Interstate, or have obtained consent from the Interstate to cross her bow. We hold the North America alone at fault.

Judgment affirmed.